## A98A0436. SMITH v. THE STATE.
### (501 SE2d 523)

BEASLEY, Judge.

John Andrew Smith appeals his conviction for aggravated assault (OCGA § 16-5-21) arising out of his pouring rubbing alcohol on his girl friend and setting her afire. He claims the court erred in (a) admitting evidence he previously attacked his estranged wife with a machete and (b) sua sponte charging the jury on voluntary intoxication.

1. "The object of all legal investigation is the discovery of truth. The rules of evidence are framed with a view to this prominent end, seeking always for pure sources and the highest evidence."[1] An age-

---

[1] OCGA § 24-1-2.

old question is whether and under what circumstances evidence of prior bad acts advances this object. Does such evidence actually materially tend to show the defendant committed the crime in question, or does it unfairly prejudice the jury against the defendant because of his character?

The pertinent statute provides that "[t]he general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct."[2] The primary aim of this rule is to avoid the forbidden inference of propensity. Just because a defendant has committed wrongful acts in the past is not alone legal grounds to believe he has done so on the occasion under scrutiny. "It is a fundamental principle in our system of jurisprudence, intended to protect the individual who is charged with crime, and to insure him of a fair and impartial trial before an unbiased jury, that the general character of the defendant and his conduct in other transactions is irrelevant unless the defendant chooses to put his character in issue. It is universally recognized . . . on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent from that for which he is on trial, *even though it be a crime of the same sort*, is irrelevant and inadmissible."[3]

The basis for this rule is a policy decision, for "character evidence is logically relevant: [c]haracter is circumstantial evidence of conduct and state of mind. A person is more likely to act in accord with his character than contrary to it. Nonetheless, because the probative value of such evidence is outweighed by the danger of prejudice, such evidence is generally *legally* irrelevant. . . . However, if the evidence is substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character, it is admissible even if it incidentally puts the defendant's character in issue.

"Purposes for which evidence of previous criminal acts might be offered, other than to show criminal character, include: [m]otive; intent; absence of mistake or accident; plan or scheme, of which the crime on trial is a part; and identity. Thus, in certain circumstances, evidence of independent crimes is admissible. Two conditions must be satisfied. First, there must be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there must be

---

[2] OCGA § 24-2-2.

[3] (Citations and punctuation omitted; emphasis in original.) *Bacon v. State*, 209 Ga. 261, 262 (71 SE2d 615) (1952); see *Stephens v. State*, 261 Ga. 467, 469 (6) (405 SE2d 483) (1991).

*sufficient similarity or connection* between the independent crime and the offense charged, that proof of the former tends to prove the latter."[4]

As an additional safeguard against the improper introduction of this inflammatory evidence, *Williams v. State*[5] and Uniform Superior Court Rule 31.3 require that a hearing be held in which the State must demonstrate, and the court must find (by a preponderance of the evidence[6]), as to each independent act the State seeks to introduce (a) the evidence will be introduced for an appropriate purpose and not to raise an improper inference as to the accused's character, (b) the accused committed the independent act, and (c) there is a sufficient connection or similarity between the independent act and the crime charged so that proof of the former tends to prove the latter.

Even if all of these criteria are met, "the trial court retains the sound legal discretion to exclude relevant similar crimes evidence on the ground that its probative value is substantially outweighed by the danger of unfair prejudice."[7] As the New Jersey Supreme Court observed, the "inflammatory characteristic of other-crime evidence mandates a careful and pragmatic evaluation by trial courts, based on the specific context in which the evidence is offered, to determine whether the probative worth of the evidence outweighs its potential for undue prejudice."[8] This final guardian of fairness allows the court, on reflection, to exclude the evidence as simply too prejudicial in the court's judgment when compared to its probative value. But an express finding that the scales weigh in favor of admission is not required.[9]

In exercising this discretion, the court should consider whether "the State's *need* for the similar transaction evidence outweigh[s] the prejudice inherent to the defendant."[10] This consideration consists of at least two questions. First, is the issue for which the State is introducing the evidence a genuinely disputed issue? For example, if identity is the State's announced purpose but is not an issue contested by defendant, then the probative value of the similar transaction evidence is acutely if not fatally diminished.[11]

---

[4] (Citations and punctuation omitted; emphasis in original.) *Walraven v. State,* 250 Ga. 401, 407-408 (4) (b) (297 SE2d 278) (1982); see *Stephens,* supra, 261 Ga. at 469.

[5] 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[6] *Freeman v. State,* 268 Ga. 185, 188 (4) (486 SE2d 348) (1997).

[7] *White v. State,* 213 Ga. App. 429, 430-431 (1) (445 SE2d 309) (1994), citing *Brockman v. State,* 263 Ga. 637, 640 (3) (436 SE2d 316) (1993).

[8] (Citations and punctuation omitted.) *State v. Cofield,* 605 A2d 230, 233 (N.J. 1992).

[9] *Farley v. State,* 265 Ga. 622, 625-626 (2) (458 SE2d 643) (1995).

[10] (Emphasis supplied.) *Phillips v. State,* 215 Ga. App. 526, 527 (4) (451 SE2d 517) (1994).

[11] See *Cofield,* supra, 605 A2d at 235 ("material issue must be genuinely disputed"); *State v. Bedker,* 440 NW2d 802, 805 (Wis. Ct. App. 1989) ("If the state offers other crimes evi-

Second, does the State need this evidence to prove the issue, or can the fact be proved otherwise? "An important factor in weighing the probative value of other-crime evidence is whether other, less-inflammatory evidence can prove the same fact in issue."[12] Citing analogous federal law, the United States Supreme Court held that "[t]he determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof. . . ."[13] To illustrate, where intent may be easily inferred from the commission of the act itself, the probative value of similar transaction evidence proffered to prove intent will generally be outweighed by its prejudicial effect.[14]

On occasion, the erroneous admission of similar transaction evidence is considered harmless because of the overwhelming weight of the evidence.[15] In such cases, the elements of the crime were proven through means other than the similar transactions, eliminating the necessity for such evidence. Requiring the State to rely on less inflammatory evidence enhances adherence to the general rule against admitting prior bad acts and stems a tide of exceptions from drowning the rule.

Applying these principles to this case, the court did not err in admitting the similar transaction evidence. The facts underlying the charged crime are that for six to eight months Smith engaged in a romantic relationship with Phalesha Turner, who would spend several nights a week with him at his residence. One night as she lay sleeping next to him Smith woke her up and began arguing. When she ignored him, he poured rubbing alcohol over her and demanded she leave his residence. She declined, and he poured more alcohol on her and ignited it with a cigarette lighter, resulting in severe burns to her right hand and arm and to the right side of her torso. His defense was that she was massaging him with alcohol when he went to light his cigarette and accidentally ignited her hand.

The prior transaction occurred three years earlier when, without warning, he arrived at his estranged wife's home with a machete and

---

dence as relevant to specific elements of the crime charged, and those elements are not at issue, the other crimes evidence is inadmissible").

[12] *State v. Oliver*, 627 A2d 144, 149 (N.J. 1993); see *State v. Harris*, 365 NW2d 922, 925 (Wis. Ct. App. 1985) ("The availability of other evidence . . . is a factor relevant to determining the admissibility of other wrongs evidence").

[13] *Old Chief v. United States*, —— U. S. —— (117 SC 644, 652, 136 LE2d 574) (1997) (quoting Advisory Committee's Notes on Fed. Rule Evid. 404, 28 USCA, p. 861); see *United States v. Astling*, 733 F2d 1446, 1456 (11th Cir. 1984).

[14] See *People v. Alvino*, 519 NE2d 808, 812 (N.Y. 1987); *People v. Carr*, 618 NYS2d 379, 380 (N.Y. App. Div. 1994).

[15] See *McGee v. State*, 267 Ga. 560, 564 (2) (480 SE2d 577) (1997); *Jones v. State*, 226 Ga. App. 721, 724 (1) (487 SE2d 618) (1997); *Weems v. State*, 204 Ga. App. 352, 355 (419 SE2d 346) (1992).

chopped down the front door. He slammed her up against the wall and cut her with the machete. His version was that she and others present attacked him.

At the Rule 31.3 hearing, the State announced four purposes for the evidence: to show absence of accident, course of conduct, motive, and bent of mind. The State argued the evidence demonstrated that in unprovoked domestic situations Smith reacted violently and with weapons when upset with his sexual partner. The court found that there was no question Smith committed the independent act and that the act was sufficiently similar to show his course of conduct or bent of mind to react violently and without provocation to those with whom he was intimate. Because the evidence focused on his state of mind, it would tend to disprove accident. The court further found the probative value of the evidence outweighed its prejudice to Smith. During trial, the court heard the estranged wife's testimony outside the presence of the jury and reaffirmed its finding of similarity. The court instructed the jury at the time of the testimony and again in the final charge about the limited purposes of the testimony.

The court's findings are measured by the clearly erroneous standard.[16] Because they both relate to intent, bent of mind and course of conduct, they are permissible purposes in assault cases,[17] particularly to assess defendant's claim of accident.[18]

Smith does not challenge the fact he committed the independent act. Instead, he argues the independent act against his estranged wife was not sufficiently similar. "While Uniform Superior Court Rule 31.3 speaks of similar transactions, the issue of admissibility of extrinsic transactions has never been one of mere similarity. It is, rather, relevance to the issues in the trial of the case. Depending upon the purpose for which the extrinsic offense is offered, the state may be required to prove a high degree of similarity between relevant characteristics of the extrinsic offenses and the charged crimes, or it may only have the burden of showing a logical connection between crimes which are essentially dissimilar."[19]

Intent or lack of mistake requires less similarity than identity.[20] "Generally, when similar transactions are being introduced to prove

[16] *Stephens*, supra, 261 Ga. at 469, fn. 2; *Parson v. State*, 229 Ga. App. 117, 118 (1) (493 SE2d 256) (1997).

[17] See *Willingham v. State*, 268 Ga. 64, 65 (3) (485 SE2d 735) (1997); *Farley*, supra, 265 Ga. at 623 (2); see also *Woods v. State*, 224 Ga. App. 52, 55 (3) (479 SE2d 414) (1996) (jury can infer intent from course of conduct); *Cole v. State*, 216 Ga. App. 68, 70 (1) (453 SE2d 495) (1994) (intent can be shown through course of conduct).

[18] *Simmons v. State*, 266 Ga. 223, 224-226, 230 (466 SE2d 205) (1996); *McKibbons v. State*, 226 Ga. App. 452, 455 (3) (486 SE2d 679) (1997).

[19] (Citations, punctuation, and emphasis omitted.) *Brockman*, supra, 263 Ga. at 640 (3).

[20] *Maggard v. State*, 259 Ga. 291, 293 (2) (380 SE2d 259) (1989); *Banks v. State*, 225 Ga. App. 754, 755 (2) (484 SE2d 786) (1997).

such issues as bent of mind, motive, intent or lack of mistake, less similarity need be shown than when identity is sought to be proved thereby."[21] Thus, in such cases fewer points of contact are required to establish the needed logical connection.[22]

In cases of domestic violence, prior incidents of abuse against family members or sexual partners are more generally permitted because there is a logical connection between violent acts against two different persons with whom the accused had a similar emotional or intimate attachment.[23] A prior act can show the accused's attitude or mindset (i.e., his bent of mind) as to how children or sexual partners should be treated or "disciplined."[24] A prior act can also show his actual course of conduct in reacting to disappointment or anger in such a relationship, evidencing a pattern. As our counterpart in New York has concluded, "[i]n domestic violence cases, evidence of prior bad acts is especially probative in overcoming a defense based on mistake. [Cit.]"[25]

Domestic violence usually occurs in the privacy of the home and because of loyalties and lack of witnesses is often difficult to prove.[26] "Certain otherwise inexplicable assaults, such as occur in a series of incidents of wife or child abuse, particularly lend themselves to this exception to the 'other offenses' rule on questions of both identity and

---

[21] *Daniel v. State*, 194 Ga. App. 495, 496 (1) (391 SE2d 128) (1990); see *Davis v. State*, 229 Ga. App. 787 (494 SE2d 702) (1997); *Hargrove v. State*, 202 Ga. App. 854, 856 (1) (415 SE2d 708) (1992).

[22] *Raulerson v. State*, 268 Ga. 623, 631 (8) (491 SE2d 791) (1997); *Fields v. State*, 223 Ga. App. 569, 571 (2) (479 SE2d 393) (1996).

[23] *Howard v. State*, 228 Ga. App. 775, 776 (1) (492 SE2d 683) (1997) ("The evidence was probative of [defendant's] method of resolving disputes with his girl friends by committing violent acts upon them"); *Grier v. State*, 218 Ga. App. 637, 639 (2) (463 SE2d 130) (1995) (abuse of former girl friend admitted to prove battery of another girl friend); cf. *Ward v. State*, 262 Ga. 293, 295 (2) (417 SE2d 130) (1992) ("The extrinsic transactions in this case show that [defendant] is obsessed with having control and dominance over women").

[24] See *Sapeu v. State*, 222 Ga. App. 509, 510-511 (4) (474 SE2d 703) (1996); *Bohannon v. State*, 208 Ga. App. 576, 579-580 (2) (b) (431 SE2d 149) (1993) ("evidence of prior acts of violence against the victim and others was properly admitted to show his motive, scheme, course of conduct, and bent of mind — i.e., his continuing pattern of abusing and intimidating the victim and other women is evidence that he likely abused and coerced the victim on this occasion").

[25] *People v. Davis*, 628 NYS2d 742, 743 (N.Y. App. Div. 1995); see *State v. Moorman*, 670 A2d 81, 87 (N.J. Super. Ct. App. Div. 1996) ("Evidence of prior episodes of child abuse unconnected with the direct cause of the child's death was admissible as proof of absence of accident or mistake"); *People v. Rios*, 624 NYS2d 459 (N.Y. App. Div. 1995) (admitted prior conviction for assaulting other son to rebut contention that this son's death was accidental); *State v. Clark*, 507 NW2d 172 (Wis. Ct. App. 1993) (admitted evidence that accused had battered a previous girl friend as proof of intent to injure current girl friend); but see *People v. Williams*, 623 NYS2d 441 (N.Y. App. Div. 1995) (defendant charged with killing infant; court erred in admitting evidence of accused's assault of infant's mother a week earlier).

[26] See *People v. Henson*, 304 NE2d 358, 363 (N.Y. 1973) (evidence of previous abuse negates the defense of accident and "is especially warranted in cases . . . where the crime charged has occurred in the privacy of the home and the facts are not easily unraveled").

motive."[27] Citing this doctrine, *Sapeu v. State*[28] admitted previous incidents of domestic violence against a mother and her children to help prove child cruelty by the father against one of the children.

Even without the domestic element, other cases have admitted prior violent assaults or batteries by the accused against others to show bent of mind or course of conduct to initiate and continue violent encounters, which tended to disprove a defendant's claim of self-defense (analogous to accident in that the act has an innocent explanation) in a murder or battery charge.[29]

Smith argues that the incidents are not sufficiently similar because a machete was used in one and rubbing alcohol and a cigarette lighter in the other. But that may just depend on what was a handy or desirable means for attack at the moment. "When sufficient basis exists to admit the evidence, dissimilarities such as the type of weapon used or the precise igniting act do not destroy the basis for admitting evidence as a similar transaction. [Cit.]"[30] The use of lethal[31] or opportunistic[32] weapons may be sufficient when considered in the context of other similarities. The focus of the inquiry is on the similarities between the incidents, not on their differences.[33]

In both the prior transaction and the crime charged, Smith, acting without provocation and to express his anger, used a lethal weapon to attack a woman with whom he had an emotional attachment through a sexual partnership. The machete incident is sufficiently similar to help show his intent (through his bent of mind and course of conduct) to harm Ms. Turner in the burning incident, which could disprove his defense of accident. Because intent was not easily inferable from the lighting of the fire itself, there was not less inflammatory evidence available to prove this element. The court did not

---

[27] (Citations and punctuation omitted.) *Herring v. State*, 224 Ga. App. 809, 814 (4) (481 SE2d 842) (1997); *Haygood v. State*, 154 Ga. App. 633 (1) (269 SE2d 480) (1980).

[28] Supra, 222 Ga. App. at 510 (4).

[29] See *Farley*, supra, 265 Ga. at 624 (2) ("Under numerous decisions of this court, the prior aggravated battery committed by appellant was relevant to rebut his claim of self-defense in this case by showing that he has a propensity for initiating and continuing unprovoked encounters which result in bodily harm to those whom he attacks"); *Gentry v. State*, 250 Ga. 802, 803 (1) (301 SE2d 273) (1983) ("Since appellant claimed self-defense, evidence of previous unprovoked attacks was relevant to show malice, intent, motive, and bent of mind"); *Sloan v. State*, 214 Ga. App. 784, 785 (1) (449 SE2d 328) (1994) ("Evidence of similar violent or hostile acts against others likewise may be admitted to show bent of mind or course of conduct") (citations and punctuation omitted); *Willis v. State*, 214 Ga. App. 479, 480 (3) (a) (448 SE2d 223) (1994) (previous incident showed accused's temper and propensity to act violently and impulsively in response to disappointment, jealousy or misunderstanding).

[30] *Willis*, supra, 214 Ga. App. at 480.

[31] *Jimenez v. State*, 228 Ga. App. 668 (492 SE2d 530) (1997).

[32] *Smith v. State*, 267 Ga. 363, 364 (3) (478 SE2d 379) (1996).

[33] *Farley*, supra, 265 Ga. at 624.

clearly err in admitting the similar transaction.

2. The court sua sponte charged the jury on voluntary intoxication. Citing *Smith v. State*[34] defendant contends the charge confused and misled the jury. But in *Smith* the evidence of defendant's intoxication had been struck. Here defendant admitted he had drunk three beers and a bottle of liquor that evening, which evidence was not struck. Accordingly, a charge of voluntary intoxication was proper.[35]

*Judgment affirmed. Pope, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 3, 1998 —
RECONSIDERATION DENIED APRIL 17, 1998 — ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*James D. Michael*, for appellant.

*J. Tom Morgan, District Attorney, Priscilla E. N. Carroll, Kevin N. Levitas, Maria Murcier-Ashley, Assistant District Attorneys*, for appellee.

---

[34] 228 Ga. App. 507, 508 (2) (492 SE2d 271) (1997).
[35] *Creson v. State*, 218 Ga. App. 184, 186 (2) (460 SE2d 83) (1995).